IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Zita Leeson Weinshienk

Civil Action No. 09-cv-01091-ZLW

SHARON KAY MONROE,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.
_____

**ORDER**
_____

      Plaintiff appeals the June 11, 2008, written decision of Administrative Law Judge

Paul Conaway (ALJ) denying her claim for Social Security Supplemental Security

Income (SSI) and Disability Insurance Benefits (DIB).  The Appeals Council denied

review (R. 1-3), and this appeal was timely filed.

      This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  The Court has

determined that the appeal can be resolved on the parties' briefing and that no oral

argument is necessary.

**BACKGROUND**

**A.     Personal History, Alleged Disability, and Filing of Claims**

Plaintiff was born on June 27, 1954. (R. 140).  Plaintiff lives in Aurora, Colorado,

with her daughter, who was 14 years old at the time of the hearing.  (R. 24, 42).  Plaintiff

has earned her GED.  (R.  25).

Plaintiff filed SSI and DIB applications on September 27, 2006, alleging a

disability onset date of December 1, 2003. (R. 81-88).  Plaintiff later amended her

disability onset date to January 30, 2004.  (R. 38-39).  Plaintiff alleges that she is

disabled due to arthritis in both of her legs.  (R. 112).

Plaintiff's date last insured for purposes of DIB was December 31, 2006. (R. 11,

96).  Thus, to receive DIB benefits, Plaintiff must show that she was disabled between

January 31, 2004, and December 31, 2006, and that the impairment lasted twelve

months or was expected to last twelve months.[1]

Plaintiff's initial applications were denied on December 18, 2006. (R. 57-58).

Plaintiff timely filed a request for her case to be heard by an ALJ. (R. 63).  After the ALJ

issued an unfavorable decision on Plaintiff's application, Plaintiff filed a Request for

Review by the Appeals Council, which was denied.  (R. 1-7).

**B.     Work History**

Plaintiff's last job was performing housekeeping/janitorial duties at Children's

Hospital in Denver from 2000-2001.  (R. 121, 151).  Plaintiff has not been employed

---

[1]42 U.S.C. § 416(i)(1); 20 C.F.R. § 404.1505(a).

since 2001. (R. 151). Prior to her job at Children's Hospital, Plaintiff had the following jobs: computer parts puller at an electronics company from 1999 to 2000; thrift store cashier in 1999; kitchen and janitorial/housekeeping worker at two nursing homes from 1996-1999; dental lab worker from 1991-1992; school bus monitor from 1986-1988; cook and kitchen worker at the University of Denver from 1985-1986; and a cashier, first at a commissary and then at a convenience store, from 1982-1985. (R. 121).

### C. Medical History

There is very little objective medical evidence in the record. Plaintiff stated at the administrative hearing that she cannot afford medical treatment because she does not have medical insurance . (R. 32).

On January 30, 2004, Plaintiff went to the University of Colorado Hospital because of left knee pain, buckling of her left knee, and swelling. (R. 161). X-rays were taken, and the hospital report's findings state: "AP, lateral, and oblique views of the left knee demonstrate mild joint space narrowing of the medial compartment with large osteophytes present in all three compartments. There is no evidence of fractures or dislocations. A small effusion is present. Bone mineral density is normal." (R. 161). The report states an impression of "Osteoarthritis with effusion of the left knee." (R. 161). The diagnosis was "Arthritis, Degenerative." (R. 162).

Mark Perea, M.D, a family practitioner, performed a consultative examination of Plaintiff on December 6, 2006. Plaintiff reported to Dr. Perea that she has had bilateral

leg pain for three to four years.  Dr. Perea noted that Plaintiff has significant crepitus[2]

with flexion of the knees bilaterally, and pain with hip rotation.  (R. 167).  He stated that

she was scheduled to have x-rays of her right knee and hip, which he believed would

show arthritic changes.  (R. 167).  Plaintiff told Dr. Perea that she is able to (1) sit for

one hour, (2) stand for one hour, (3) walk five blocks, (4) lift or carry ten pounds, (5)

climb a flight of stairs with difficulty, and (6) bend at the waist without difficulty.  She

stated that she has difficulty squatting.  She also stated that she uses a cane on

occasion, which is self-prescribed. (R. 166).  Dr. Perea's assessment was

"Arthritis/Bilateral Knee Pain."  (R. 167).  He stated that he believed that Plaintiff is

limited to the following: (1) sitting six to eight hours with no more than four hours

uninterrupted, (2) standing and walk four hours per day with no more than two hours

uninterrupted, and (3) lifting or occasionally carry 20 pounds.  He stated that she would

have frequent limitations on crouching, bending, and stooping because of her knee

pain, and that she may also have difficulty going up and down stairs and walking on

uneven ground because of her knee pain.  (R. 167).

The x-rays of Plaintiff's right knee and right hip taken after Dr. Perea's

examination revealed: (1) "Likely small osteochondral defect of the medial tibial plateau,

right knee," (2) "Moderate osteoarthritic changes of the right knee," and (3) "Minimal

osteoarthritic changes of the right hip."  (R. 165).

---

[2]"Crepitus or crepitation refers to "a grating or crackling sound or sensation (as that produced by the fractured ends of a bone moving against each other or as that in tissues affected with gas gangrene)." *Medline Medical Dictionary*, http://www.merriam-webster.com/medlineplus/crepitation.

**D.    The Administrative Hearing**

The administrative hearing was held on June 5, 2008. (R. 18). Plaintiff was not represented by an attorney at the hearing. The ALJ advised Plaintiff of her right to an attorney, and Plaintiff stated that she was aware of that right but wished to proceed without an attorney. (R. 21). Plaintiff and Vocational Expert Karen Black (VE) testified at the hearing.

Plaintiff testified that she injured her hand as a child and as a result cannot move the most distal joint of her left thumb. (R. 34-37). However, she can still grab and handle things. (R. 37).

Plaintiff testified that she can stand for about 30 minutes. (R. 39). She testified initially that she can sit for up to one hour at a time, for a total of four hours in an eight hour workday, but then later stated that she believes she can sit for six or more hours total. (R. 39-42). She stated that she can only walk one block at a time before she must take a break, and that she can walk a total of one hour in an eight hour day. (R. 33). She testified that she can lift 20 pounds. (R. 40). She further testified that she can stand for a total of one or two hours in an eight-hour day. (R. 41).

Plaintiff stated that she is able to do housework with her daughter's help, but she has to take breaks. (R. 42). She does her own shopping, cooking, and laundry. (R. 42-43). She spends her days around her house, cleaning her house, or visiting with neighbors. (R. 43). Her grown son sometimes picks her up and takes her out. (R. 43).

Plaintiff testified that she is in constant pain all the time. (R. 45). She stated that she is constantly taking over-the-counter medications just to make it through the day, and sometimes takes her brother's prescription Tylenol 500. (R. 45).

Karen Black testified at the hearing as a Vocational Expert (VE). (R. 46). Black testified that Plaintiff's work as a janitor/housekeeper constituted unskilled work at the medium physical demand level. (R. 47). She testified that Plaintiff's work as a cashier constituted unskilled work at the light physical demand level. (R. 47). Finally, she testified that Plaintiff's work pulling parts at the electronics company constituted unskilled work at the medium physical demand level. (R. 48).

The ALJ posed three hypotheticals to the VE. In the first hypothetical, he asked her to assume someone of Plaintiff's age, education, and past work, with the inability to move the most distal joint of her left thumb, who, in an eight hour workday, can lift up to 20 pounds, walk only one block at a time for a total of one hour, stand 30 minutes at a time for a total on one to two hours, and sit only 60 minutes at a time for a total of six hours. The VE testified that jobs at the unskilled, light exertional level exist for a person with such limitations in the region encompassing Montana, Wyoming, Utah, Colorado, Idaho, Nevada, Oregon, and Washington. (R. 49-50). Examples of such jobs include assembler (52,500 jobs regionally) and office helper (11,000 jobs regionally).

In the second hypothetical, the ALJ asked the VE to assume someone of Plaintiff's age, education, and past work, who is limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing and walking two hours at one time, up

6

to a maximum total of four hours per day, and sitting up to six to eight hours a day with

no more than four hours uninterrupted.  The person would have a limited ability to go up

and down stairs, and could not walk on uneven ground such as a construction site.  (R.

52-53).  The VE testified that this person would be able to perform Plaintiff's past job as

a cashier.  (R. 53).

In the third hypothetical, the ALJ added the additional limitations that the person

described in the second hypothetical also could only occasionally climb a ladder, rope or

scaffold, was limited to only occasional stooping, kneeling, crouching, and crawling, and

could not be exposed to extreme cold or to wetness or vibration.  (R. 54).  The VE

testified that such a person could perform Plaintiff's past job as a cashier.  (R. 54).

Plaintiff did not ask any questions of the VE at the hearing.


**ANALYSIS**

### A.    Standard of Review

When a district court reviews the Commissioner's decision to deny Social

Security benefits the Court's only job is to determine whether the Commissioner's

factual findings are supported by substantial evidence in the record as a whole, and

whether the correct legal standards were applied.[3]  Substantial evidence is such

relevant evidence as a reasonable mind might accept as adequate to support a

---

[3]Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003).

conclusion.[4] Since review is based on the record as a whole, the entire record must be

examined to determine whether the evidence supporting the decision is substantial,

taking "into account whatever in the record fairly detracts from its weight."[5] However,

the Court may neither reweigh the evidence nor substitute its discretion for that of the

ALJ.[6]

## B.     Determination of Disability

An individual

> shall be determined to be under a disability only if [her]
> physical or mental . . . impairments are of such severity that
> [she] is not only unable to do [her] previous work but cannot,
> considering [her] age, education, and work experience, engage
> in any other kind of substantial gainful work which exists in the
> national economy.[7]

Disability requires more than the mere inability to work without pain.[8]

Whether a person has a "disability" supporting entitlement to Social Security

benefits is determined using a five-step sequential evaluation process, which considers

whether the claimant:

(1) worked during the alleged period of disability;

---

[4]Id.

[5]Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004) (quoting Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994)).

[6]White v. Massanari, 271 F.3d 1256, 1257 (10th Cir. 2001).

[7]42 U.S.C. § 423(d)(2)(A).

[8]See Ray v. Bowen, 865 F.2d 222, 225-26 (10th Cir. 1989).

(2) has a severe impairment;

(3) has a condition which meets or equals the severity of a listed impairment;

(4) can return to his or her past relevant work; and

(5) if not, whether he or she can perform other work in the national economy.[9]

If a determination can be made at any step, it is not necessary to proceed to the next step of the analysis.[10]

A severe impairment is one that "significantly limits your physical or mental ability to do basic work activities."[11] Basic work activities means "the abilities and aptitudes necessary to do most jobs."[12] This includes:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.[13]

---

[9]20 C.F.R. § 404.1520(a)(4) (2008); *see* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. Id. at 751, n.2. If claimant is successful, the burden of proof falls on the Commissioner to establish the requirements of step five. Id. at 751.

[10]20 C.F.R. § 404.1520(a)(4).

[11]20 C.F.R. § 404.1520(c).

[12]20 C.F.R. § 404.1521(b).

[13]Id.

**C.    The ALJ's Decision**

The ALJ's written decision proceeds through all five steps of the sequential

analysis.  The ALJ determined that Plaintiff is not disabled as defined by the Social

Security Act, and denied Plaintiff's application for SSI and DIB benefits.

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful

employment activity during the alleged period of disability. (R. 13).

At step two, the ALJ determined that Plaintiff had the following severe

impairments: moderate degenerative joint disease of the bilateral knees, minimal

degenerative joint disease of the right hip, obesity, and status/post remote laceration to

the left hand with resulting loss of all motion in the distal joint of the left thumb.  (R. 13).

At step three, the ALJ determined that Plaintiff's impairments did not meet or

equal the requirements in the Listing of Impairments in order to be considered a

presumptive disability. (R. 14).

Before proceeding to step four, the ALJ was required to determine Plaintiff's

"residual functional capacity" (RFC), which is her ability to perform work on a regular

and continuing basis despite her impairments.[14]  The ALJ stated that he "finds the

claimant's testimony regarding the limits from her medically determinable impairments is

generally credible," but "does not accept the walking and standing limits the claimant

testified to because the objective medical evidence supports only moderate

---

[14]A claimant's RFC is his or her ability to perform work on a regular and continuing basis despite
his or her impairments.  20 C.F.R. 404.1545.   The ALJ must determine the claimant's RFC before
proceeding to step four.  20 C.F.R. § 404.1520(a)(4).

degenerative joint disease in the bilateral knees." (R. 16).  The ALJ found that Plaintiff has the RFC to lift and carry a maximum of 20 pounds occasionally and 10 pounds frequently, and stand or walk two hours at a time for a total of four hours during an eight hour workday, and sit four hours at one time for a total of six to eight hours during an eight hour workday.  He found that Plaintiff can frequently climb ramps and stairs and balance.  He found that she can occasionally crouch, bend, stoop, and climb ladders, ropes, or scaffolds.  He found that, due to Plaintiff's difficulty with ambulation, Plaintiff should avoid walking over uneven ground and climbing ramps or stairs, but that these activities are not precluded.  He found that she should avoid concentrated exposure to extreme cold, wetness, and vibration.  Finally, due to the fact that Plaintiff cannot move the distal joint in her left thumb, the ALJ found that Plaintiff is limited in using her left thumb for certain types of fingering, such as writing. (R. 14-16).

At step four, the ALJ determined that Plaintiff was able to perform her past relevant work as a cashier.  (R. 16-17).

Because the ALJ found that Plaintiff was able to perform her past relevant work, he was not required to proceed to step five.  However, the ALJ stated that even if Plaintiff could not perform her past relevant work and he were to proceed to step five, Plaintiff would not be disabled at step five.  The ALJ stated that if he were to accept all of the claimed limitations that Plaintiff testified to, the VE identified jobs existing in significant numbers in the U.S. economy that someone of Plaintiff's age, education, and past relevant work could perform despite those limitations.  (R. 17).

The ALJ concluded that Plaintiff is not disabled under the Social Security Act and thus is not entitled to Social Security disability benefits. (R. 17).

### D.     Plaintiff's Arguments

Plaintiff argues that Defendant failed to discharge his duty to develop the record when determining Plaintiff's RFC. "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . ."[15] "Although a claimant has the burden of providing medical evidence proving disability, the ALJ has a basic duty of inquiry to fully and fairly develop the record as to material issues."[16] "The standard is one of reasonable good judgment."[17] "The ALJ's duty to develop the record is heightened when a claimant is unrepresented [by counsel]."[18] However, "[i]t is beyond dispute that the burden to prove disability in a social security case is on the claimant."[19]

In response to the ALJ's questioning, Plaintiff testified that, due to her pain, she is limited to standing 30 minutes at a time for a total of one or two hours in an eight-hour workday and walking one block at a time for a total of one hour in an eight-hour workday. She initially testified that she is limited to sitting one hour at a time for a total

---

[15]Sims v. Apfel, 530 U.S. 103, 110 (2000).

[16]Baca v. Department of Health and Humans Servs., 5 F.3d 476, 479-80 (10th Cir. 1993) (citations omitted).

[17]Hawkins v. Chater, 113 F.3d 1162, 1168 (10th Cir. 1997).

[18]Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992).

[19]Hawkins, 113 F.3d at 1164.

of four hours in an eight-hour workday.  The ALJ proceeded to note that Plaintiff had

accounted for her body positioning for only six or seven hours out of an eight- hour work

day:

> Q      Okay, so you've given me only six or seven hours out
> of eight.  So what are you doing the rest of the day?
>
> A      Well, I guess I'm still just resting and getting up and
> piddling around and  - -
>
> Q      Okay, so do you think you could sit longer than six out
> of eight hours in a day?  I need to get to eight hours
> somewhere.
>
> A      Okay, I believe I can maybe.

(R. 42)  Plaintiff argues that she was prodded and led by the ALJ to state that she could

sit for a total of six or more hours.  While the ALJ's question was perhaps not optimally

phrased, Plaintiff was free to respond with an answer along the lines of, "no, I can only

sit for a total of four hours," and then otherwise account for what she does with her body

during the remaining two hours out of an 8 hour period.  While Plaintiff suggests

numerous additional questions that, she asserts, the ALJ should have asked, the Court

concludes that the questions asked by the ALJ were adequate to fully and fairly develop

the record as to the material factual issues in this case.

The ALJ found not credible, and thus rejected, Plaintiff's testimony concerning

her standing, walking, and sitting limitations, and instead accepted, in their entirety,

consultative physician Dr. Perea's conclusions that Plaintiff can (1) stand two hours at a

time for a total of four hours in an eight-hour workday, (2) walk two hours at a time for a

total of four hours hour in an eight-hour workday, and (3) sit four hours at a time for a total of six to eight hours in an eight-hour workday.[20]  The Court need not determine whether the ALJ erred in relying on Dr. Perea's opinion concerning Plaintiff's limitations, because when the ALJ presented to the VE a hypothetical adopting Plaintiff's own testimony of her physical limitations, the VE testified that there were jobs in the national economy for someone with such limitations who is of Plaintiff's age and holds the same education and work history.  Thus, there is substantial evidence in the record to support the ALJ's alternative finding of non-disability at stage five.

Plaintiff also argues that in order to develop the record sufficiently, Defendant was required to, but did not, order an extensive functional capacity examination of Plaintiff by a physical therapist or occupational therapist, "over several days at a minimum to several weeks."[21]  Plaintiff has cited no authority in support of this contention.  Plaintiff asserts that such functional testing was required because, while Plaintiff's testimony concerning her RFC was sufficient, without more, to support a finding of disability in this case, because the ALJ rejected Plaintiff's testimony, the record lacked sufficient evidence to support a finding of no disability.[22]  Again, the ALJ *did* adopt Plaintiff's testified-to RFC in his first hypothetical to the VE, and then based

---

[20]While the ALJ's decision states only that the ALJ was not accepting the "walking and standing" limitations that Plaintiff testified to, it appears that the ALJ also rejected Plaintiff's testimony concerning her sitting limitations.  (R. 16)

[21]Plaintiff's Opening Brief (Doc. No. 11) at 12.

[22]See Plaintiff's Reply Brief (Doc. No. 15) at 6-7.

his alternative finding of no disability at step five on the VE's testimony that jobs existed for someone with such an RFC. Additionally, Plaintiff argues that the ALJ also was required to order a functional capacity evaluation of Plaintiff's mental health. However the ALJ had no such duty, as there is nothing in the record indicating that Plaintiff was claiming disability due to a mental impairment, or any objective evidence of a mental impairment.[23] While Plaintiff did indicate on her SSA Function Report that when she is in pain she can pay attention "about 5 minutes," (R. 134), that statement cannot be reasonably construed as an allegation of a disabling mental impairment.

Accordingly, for the reasons set forth above, it is

ORDERED that the June 11, 2008, written decision of Administrative Law Judge Paul Conaway is affirmed. It is

FURTHER ORDERED that the Complaint and cause of action are dismissed with prejudice. It is

FURTHER ORDERED that the parties shall pay their own costs and attorney's fees.

DATED at Denver, Colorado, this <u>28th</u> day of September, 2010.

BY THE COURT:

_____
ZITA LEESON WEINSHIENK, Senior Judge
United States District Court

---

[23]See e.g. Diaz v. Secretary of Health and Human Servs., 898 F.2d 774, 778 (10th Cir. 1990) (ALJ not required to order consultative examination of depression where there was no objective evidence that the claimant suffered from depression).

15